W. SHARP, Judge.
Margaret Reddick appeals from the trial court’s order which denied her request to *951 amend her incapacitated husband’s revocable trust, acting in her capacity as her husband’s plenary guardian. The trial court found that Margaret failed to show that it was in her husband’s (Albert Reddick’s) best interest to amend the trust as she proposed: substituting herself as successor trustee of his trust in place of SunTrust Bank, East Central Florida. We affirm.
The trial court made numerous fact findings, which are substantiated by the record below. It concluded:
Mrs. Reddick has failed to show any overriding benefit to Mr. Reddick’s Trust, which convinces this Court that his estate plan, adopted after consultations with diversified planning disciplines, should be changed. Mrs. Reddick’s offer to serve as Trustee without compensation and without the power to invade principal does not change the outcome.
The court also found that Margaret was devoted to her husband and her petition to replace SunTrust was well motivated.
Section 744.441 provides that with court approval, a plenary guardian may:
(2) Execute, exercise or release any powers as trustee, personal representative ... that the ward might have lawfully exercised, consummated or executed if not incapacitated, if the best interest of the ward requires such execution, exercise or relief.
In In re Guardianship of Muller, 650 So.2d 698 (Fla. 4th DCA 1995), the court allowed a plenary guardian to amend a trust pursuant to section 744.441. The guardian showed that the current trustee had a conflict of interest, and it was in the incompetent’s best interest to amend the trust and remove the trustee.
In this case, the evidence tipped the other way. The value of the trust was $2,800,000 in 1995, consisting of stock equities. Albert had consistently selected corporate trustees to serve as trustee of his trust, as well as successor trustees. Margaret had little investment skills or knowledge about managing a stock portfolio. SunTrust had just recently begun to serve as trustee and Margaret had no complaint about the quality of service rendered thus far. Its fees for serving as trustee were $20,000, but there was no showing that this was an unreasonable amount for acting as trustee for a trust the size of Albert’s made up of stock equities.
The court also considered the fact that Albert’s trust documents were clear that he had intended to have a bank or corporate entity serve as trustee as well as successor trustee. It rejected and excluded various oral testimony that Albert had wanted to change his trustee. That appears to be a collateral matter.
In our view, the issue in this case was whether Margaret established by substantial competent evidence that it was in Albert’s best interest to replace Sun Trust with herself as trustee of his trust. See Lonergan v. Estate of Budahazi, 669 So.2d 1062 (Fla. 5th DCA 1996). Based on this record and the trial court’s findings, we conclude she failed to do so.
AFFIRMED.
GRIFFIN, C.J., and DAUKSCH, J., concur.