NORTHCUTT, Judge.
Albert McNorton challenges several aspects of the final judgment dissolving his marriage to Gloria McNorton. We agree with only one of his complaints.
It is uncontested that Mr. McNorton. withdrew funds from two marital retirement accounts to buy himself a new residence and to use for his living expenses. The circuit court properly determined that the withdrawn funds were applied to a purpose unrelated to the marriage, and it correctly charged those assets to Mr. McNorton’s share of the equitable distribution. But the court erred by additionally charging him with lost earnings on the withdrawals.
We question whether lost earnings are properly included in an equitable distribution; we have found no other example in case law. But we do not need to decide that issue because in this case the evidence was woefully insufficient on this point. A circuit court’s valuation of an asset must be supported by competent, substantial evidence. Tradler v. Tradler, 100 So.3d 735, 738 (Fla. 2d DCA 2012). “Substantial evidence” means “ ‘some (more than a mere iota or scintilla), real, material, pertinent, and relevant evidence (as distinguished from ethereal, metaphysical, speculative or merely theoretical evidence or hypothetical possibilities)’ ” that has definite probative value. Lonergan v. Estate of Budahazi, 669 So.2d 1062, 1064 (Fla. 5th DCA 1996) (quoting Dunn v. State, 454 So.2d 641, 649 n. 11 (Fla. 5th DCA 1984)).
Here, the only evidence offered to prove either the fact or the amount of the supposed lost earnings on the retirement account withdrawals came from Ms. McNorton’s accountant. He testified that he calculated the alleged loss by first determining the dates that Mr. McNorton withdrew funds from the accounts. He then ascertained the ending balances of a Standard and Poor’s index on those dates and compared them to the ending balance of the index on November 25, 2011, the Friday before the dissolution trial began. He applied the percentage increase in the index to the amounts withdrawn from the accounts to arrive at the amount by which the withdrawn sums would have appreciated if they had been left in the accounts.[1]
The accountant’s testimony was insufficient for the simple reason that Ms. McNorton offered no proof of how the funds in the retirement accounts were actually invested. For all the court knew, they were held in bond funds or money market accounts. And even if the accounts were invested in stocks, the increases (or decreases) in their values could not be determined by consulting an index that was not shown to be relevant to those particular investments. Without evidence of the composition of the retirement investments, the increase in a Standard and Poor’s index simply had no probative value. In short, the accountant’s testimony in this regard was speculative. As such, it could not justify charging Mr. McNorton with lost earnings on the retirement fund withdrawals. See Lassett v. Lassett, 768 So.2d 472, 474 (Fla. 2d DCA 2000).
*484 We reverse the final judgment insofar as it charges Mr. McNorton’s share of the equitable distribution with lost earnings of $13,167 and $254. On remand the court shall adjust the equitable distribution scheme accordingly. The judgment is affirmed in all other respects.
Affirmed in part, reversed in part, and remanded.
VILLANTI and SLEET, JJ., Concur.

. Significantly, the accountant did not disclose which of the many Standard and Poor’s indices he consulted or why. Perhaps the most widely known of them is the S & P 500, based on the market capitalizations of 500 large companies having common stock listed on the New York Stock Exchange or the NASDAQ Stock Market. Other well known Standard and Poor's indices are the S & P Mid-Cap 400, the S & P SmallCap 600, and the S & P Composite 1500. The S & P Dow Jones Indices company website lists 1,625 different indices having varying compositions and weighting methodologies. S & P Dow Jones Indices, http://us.spindices.com. (last visited Feb. 11, 2014).