*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re HUGHES ESTATE.

---

THOMAS E. DUNN,

Appellant,

v

RANDA HUGHES,

Appellee.

UNPUBLISHED
June 11, 2026
9:58 AM

No. 374611
Gladwin Probate Court
LC No. 24-017571-DE

---

Before: REDFORD, P.J., and WALLACE and LIEVENSE, JJ.

PER CURIAM.

Following the death of Robert Hughes (the decedent), Randa Hughes, the decedent's sister, filed an application for informal probate on September 9, 2024 requesting that the court appoint her personal representative of her late brother's estate pursuant to the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq*. In her application, Randa alleged that the decedent died intestate and that no other persons have prior or equal right to appointment as interested persons. She further filed a testimony-to-identify-heirs form declaring under penalty of perjury that the decedent had no surviving spouse, and only one child, Steven Lang, who was no longer an heir due to being adopted by someone other than a stepparent. That same day, the probate register appointed Randa Hughes as personal representative, without bond, and issued letters of authority (through informal proceedings).

On September 16, 2024, attorney David J. Gilbert filed a motion on behalf of Thomas Dunn for testate probate, seeking authentication of a purported will, appointment of Dunn as personal representative, and an order to recover estate property.[1] Following a hearing, the trial court denied

---

[1] In his motion, Gilbert asserted that he represented the personal representative of the Robert Olin Hughes Estate. As noted above, Randa Hughes was appointed personal representative by the court

the motion, and ordered the matter to proceed as an intestate estate pursuant to the application of Randa Hughes. Thomas Dunn, as the nominated personal representative in the purported will, appeals that decision. We affirm.

## I. MOTION TO ADMIT WILL TO PROBATE

Attached to Dunn's September 16, 2024 motion was a document that purported to be a copy of the last will and testament of Robert O. Hughes, Jr. In the purported will, the residue of the estate's assets are bequeathed to the decedent's biological son, Steven Lang (who would receive 60% of the residue after payment of burial expenses, debts and other expenses), and the Veterans of Foreign Wars Post 7303 (which would receive 40% of the residue). As previously noted, the purported will nominates Dunn to serve as personal representative of the estate.

The probate court conducted a hearing regarding Dunn's motion on October 30, 2024. Dunn testified that he previously worked as a private contractor for Gilbert's law firm, that the decedent entrusted him with safekeeping the original will, and that it was the practice of the law firm to make "[e]lectronic copies for the file."[2] Dunn said he did not have the original will because it was destroyed when his house caught fire, but that he had the electronic copy.[3] A printed copy of the purported will, which was attached to Dunn's motion, is notarized and contains the signatures of two witnesses who were allegedly present for the signing of the will.

Dunn further testified that the decedent had never asked for the original will to be returned to him and that, to his knowledge, the decedent never prepared any subsequent wills. He testified that he believed the will to have been drafted by Gilbert. However, Gilbert denied drafting the will, stating on the record, "I do identify my work with 'drafted by.' So when I saw this; I looked at it and was able to identify that it is not mine, as an officer of the court."

Dunn offered no other witnesses and no other evidence at the hearing.

---

prior to the filing of Gilbert's motion. Thus, Gilbert actually represented Dunn as the personal representative nominated in the purported will, i.e., Dunn was a prospective personal representative. Subsequent to Gilbert filing a claim of appeal on behalf of Dunn, Randa Hughes filed a motion to disqualify Dunn in this matter because Gilbert's bar license subsequently became inactive. That motion was denied by this Court. *In re Hughes Estate*, unpublished order of the Court of Appeals, entered May 18, 2026 (Docket No. 374611). The State Bar of Michigan's Member Directory does, in fact, list Gilbert's membership as "inactive." State Bar of Michigan Member Directory Search Details <https://www.michbar.org/memberdirectory/detail/id=56956> (accessed May 26, 2026). As a result, Gilbert no longer represents Dunn (or any other interested person) in these proceedings.

[2] Dunn clarified at the hearing that he is not an attorney, but he provided no further explanation as to what his work entailed as a private contractor for the law firm.

[3] Appellant indicated that he found the electronic copy on his computer.

The trial court took the matter under advisement and indicated that it would reconvene to issue an oral opinion on the record.

On December 11, 2024, the court issued its oral opinion, concluding that Dunn's document would not be accepted as the decedent's will. The court reasoned that, under Michigan law, a will that is known to have existed and to have been in the decedent's custody during his lifetime, which cannot then be found at the time of death, "raises a presumption that such a will was, in fact, destroyed by decedent with the intention of revoking that [w]ill." While the court noted that such a presumption can be overcome by facts and circumstances that would otherwise lead the court to believe that a presented copy was a true representation of the decedent's true will and testament, it found that the testimony offered at the hearing "has not risen to the level of allowing the Court to overcome the presumption." As a result, the court held that it would not admit the purported copy as the decedent's will in this matter. In making its decision, the court noted that it considered the credibility of the witnesses and the circumstances surrounding how the purported copy was found.

A written order was subsequently issued by the court on February 18, 2025, that included the following:

> The court finds that the circumstances surrounding this copy of the purported last will and testament of Robert O. Hughes do not lead the court to the conclusion that the presumption of revocation has been overcome. The court considers the credibility of the witnesses, the circumstances surround the finding of the purported last will and testament, and the disparate accounts of how the purported last will and testament may have been created. The court appreciates attorney Gilbert's forthrightness in stating conclusively during the hearing that he did not prepare the last will and testament testified to by the proponent of the copy of the purported last will and testament, Mr. Dunn. This stark divergence in the alleged origin of the last will and testament was particularly concerning.

The court ordered that the purported copy of the will was not accepted for probate and that the matter would go forward as an intestate estate based upon the [application] of Randa Hughes. Dunn now appeals that order.[4]

## II. ANALYSIS

Dunn advances two arguments on appeal. First, he argues that the purported copy of the will should have been admitted under MCR 5.132(A) because Randa did not object to its admission as an exhibit at the hearing. MCR 5.132, entitled "Proof of Wills," states in full:

---

[4] Decedent's biological son, Steven Lang, was listed as an interested party on the caption for the motion for testate probate and attorney Gilbert filed an appearance on his behalf at the time he filed that motion, but Mr. Lang does not appear to have participated in that motion and, in any event, is not a party to this appeal.

(A) Deposition of Witness to Will. If no written objection has been filed to the admission to probate of a document purporting to be the will of a decedent, the deposition of a witness to the will or of other witnesses competent to testify at a proceeding for the probate of the will may be taken and filed without notice. However, the deposition is not admissible in evidence if at the hearing on the petition for probate of the will an interested person who was not given notice of the taking of the deposition as provided by MCR 2.306(B) objects to its use.

(B) Use of Copy of Will. When proof of a will is required and a deposition is to be taken, a copy of the original will or other document reproduced in accordance with the Records Reproduction Act, MCL 24.401 *et seq.*, may be used at the deposition.

Dunn misunderstands the scope and effect of MCR 5.132. The plain language of MCR 5.132 does not provide that a purported copy of a will be admitted so long as the other party does not object. Instead, the effect of MCR 5.132 on purported copies is to allow them to be used for the purposes of taking a deposition from a witness, the transcript of which can be filed with the court. In those instances, at the hearing on the petition for probate of a will, such a deposition is not admissible if an interested person, who was not given proper notice of the taking of the deposition, objects to the transcript's use at the hearing. Dunn's argument is, therefore, without merit.

Next, Dunn argues that the trial court erred by applying the presumption of revocation. "The standard of review on appeal in cases where a probate court sits without a jury is whether the court's findings are clearly erroneous." *In re Bennett Estate*, 255 Mich App 545, 549; 662 NW2d 772 (2003). "A finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *In re Koehler Estate*, 314 Mich App 667, 674; 888 NW2d 432 (2016). Questions of statutory interpretation are reviewed de novo. *Id.*

A probate court's decision as to the appointment of a personal representative is reviewed for abuse of discretion. *In re Kramek Estate*, 268 Mich App 565, 575; 710 NW2d 753 (2005). "[A]n abuse of discretion occurs when the decision resulted in an outcome falling outside the range of principled outcomes." *In re Waters Drain Drainage Dist*, 296 Mich App 214, 216; 818 NW2d 478 (2012). "A court necessarily abuses its discretion when it makes an error of law." *In re Guardianship of Gordon*, 337 Mich App 316, 318; 975 NW2d 114 (2021).

The common-law presumption of revocation provides "that where a will cannot be found at the death of the testator upon proper search being made, and especially where the will is not traced out of the possession of the testator, it is to be presumed that it was destroyed by him *animo revocando*."[5] *In re Smith Estate*, 145 Mich App 634, 637; 378 NW2d 555 (1985) (quotation marks and citation omitted). "[I]n situations where a copy of the original will exists, but the testator's copy is missing . . . there is a rebuttable presumption that the testator destroyed the will with the intent to revoke it." *In the Matter of the Christoff Estate*, 193 Mich App 468, 473; 484 NW2d 743

---

[5] "Animus revocandi" is defined as "[a]n intention to revoke (a will)." *Black's Law Dictionary* (12th ed), p 111.

(1992)).[6] Consistent with this law, our model jury instructions state that "[a] will that is known to have existed and to have been in the decedent's custody during [ his / her ] lifetime and which cannot be found at [ his / her ] death raises a presumption that such will was destroyed by the decedent with the intention of revoking it." M Civ JI 170.32.[7] The proponent of the copy of the lost will bears the burden of showing facts or circumstances sufficient to overcome the presumption. *In re Smith Estate*, 145 Mich App at 637.

This Court "will defer to the probate court on matters of credibility, and will give broad deference to findings made by the probate court because of its unique vantage point regarding witnesses, their testimony, and other influencing factors not readily available to the reviewing court." *In re Guardianship of Redd*, 321 Mich App 398, 412; 909 NW2d 289 (2017). In its written order denying admission of the purported will to probate, the court noted that petitioner's testimony did not establish whether the purported will was located on petitioner's personal computer or counsel's office computer. Additionally, the court specifically noted the fact that Dunn's testimony, concerning who prepared the will, was directly contradicted by his counsel's testimony. As noted above, Dunn offered no additional witnesses in support of his motion and offered no other evidence, i.e., the only evidence he presented was his testimony and the copy of the purported will. Overall, ambiguities and discrepancies in Dunn's testimony eroded the factual basis upon which the trial court could have found that the presumption had been rebutted.

Based on the lower court record, this Court is not left with a firm and definite conviction that the trial court was mistaken in finding that Dunn failed to rebut the presumption of revocation. Thus, we find that the trial court did not err by denying Dunn's motion.

Affirmed.

/s/ James Robert Redford
/s/ Randy J. Wallace
/s/ Andrew J. Lievense

---

[6] These cases were decided prior to the enactment of EPIC. Nonetheless, neither party has cited a provision in EPIC that would modify the common-law presumption of revocation. Additionally, "[i]t is an elementary rule of statutory construction that laws are assumed to be enacted by the legislative body with some knowledge of and regard to existing laws upon the same subject." *People v McKewen*, 516 Mich 23, 39; 33 NW3d 307 (2024) (quotation marks and citation omitted).

[7] The model civil jury instructions are not binding but may be used to assist courts. *Johnson v Recca*, 492 Mich 169, 195 n 18; 821 NW2d 520 (2012).